Ristis Unemployment Compensation Case.
Riehl, Appellant, *v.* Unemployment Compensation Board of Review.

Argued April 12, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Martin Croissant,* for appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Herbert B. Cohen,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY WOODSIDE, J., July 21, 1955:

Frances P. Ristis, the claimant herein, was declared eligible for unemployment compensation benefits by the bureau, the referee and the board.

The appellant, who was claimant's last employer, contends she should be disqualified under the provisions of Section 402(e), 43 PS §802, of the Unemployment Compensation Law, of December 5, 1936, P. L. 2897 (1937) as amended, which provides:

"A claimant shall be ineligible for compensation for any week . . .

"(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work . . ."

"Willful misconduct" as used in this section does not necessarily require actual intent to wrong the employer. If there is a conscious indifference to the perpetration of a wrong, or a reckless disregard of the employe's duty to his employer he can be discharged for "willful misconduct" and will be denied compensation. *Allen Unemployment Compensation Case,* 168 Pa. Superior Ct. 295, 77 A. 2d 889 (1951).

As suggested by Judge Reno in the above case at page 297 it is difficult to "mark the precise connotative boundaries of the term 'willful', as employed in the law. The word carries various shades of meaning and takes on the color of its context."

In cases such as the one before us, whether there is "willful misconduct" depends primarily upon the determination of factual matters.

Claimant was employed as a legal stenographer by Walter W. Riehl, Attorney at Law, of Pittsburgh for approximately 4 months ending July 16, 1954 when she was discharged. In his statement to the bureau her employer gave as the reason for her discharge that " . . . she could not do any legal work except simple copy work and some letters many of which had to be redone because of mistakes."

The referee, affirmed by the board, found that " . . . claimant was hired as a legal stenographer, and when her employer found that she was not qualified to do the work for which she was hired, he dismissed her." The next finding continues: "The claimant was not willful in neglect of her duties, but was incompetent to perform the duties required of her by the appellant-employer, and was unable to meet his requirements because of her lack of experience in the field of legal stenography."

These findings are supported by substantial competent evidence which justified the legal conclusion that the claimant was not guilty of willful misconduct.

The record indicates that the claimant's only experience in the field of legal stenography was in an attorney's office for three weeks in 1951, and she left this position because she was not able to do the work. Subsequently she worked in an insurance office doing a limited type of legal work such as copying leases. Her employer was cognizant of claimant's qualifica-

tions when he employed her, and indicated that he was hiring her on a trial basis.

He contended before the referee that when he corrected her, she became "lippy"; that she complained that her wages were insufficient; and that she threatened to drag him through the courts.

Claimant denied these contentions. She said she never argued with her employer unless she felt she was being abused "unnecessarily"; that she tried at all times to do the work to the best of her ability and whenever asked why something wasn't completed she always tried to get it done as soon as possible. She said that the only time she mentioned "courts" was when the employer threatened to lay her off without giving any reason. At such times she informed him "If you want to lay me off, you have to give me two weeks notice, because I know the law . . ." She said her reference to "courts" related to her right to unemployment compensation.

The testimony of the adverse parties was in many respects conflicting. Under such circumstances the findings of the board are binding upon us if supported by the evidence. Section 510 of the Unemployment Compensation Law as amended, 43 PS §830. Here there was substantial competent evidence to sustain the findings of the Unemployment Compensation authorities.

"The credibility of the witnesses, the weight of their testimony, and the reasonable inferences to be drawn from it are for the board. Our duty is performed by studying the testimony in the light most favorable to the party in whose favor the board has found, giving that party the benefit of every inference which can be logically and reasonably drawn from it." *Stillman Unemployment Compensation Case,* 161 Pa. Superior Ct. 569, 575, 56 A. 2d 380 (1948).

Order affirmed.