Philadelphia Coke Division, Eastern Associated Coal Corporation *v.* Unemployment Compensation Board of Review.

38

Argued March 10, 1972, before Judges CRUMLISH, JR., ROGERS and BLATT, sitting as a panel of three.

*J. Freedley Hunsicker, Jr.,* with him *Drinker, Biddle & Reath,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., June 29, 1972:

This is an appeal by the employer, Philadelphia Coke Division, from the award of benefits to Lawrence Eaddy (Claimant) by the Unemployment Compensation Board of Review.

Claimant had been working as a belt man until October 8, 1970 when he suffered a job related injury causing him to be absent until October 19, 1970. On December 7, 1970, claimant again left work complaining of a recurrence of pain from the October 8th injury. On December 8th, he saw the employer's doctor who advised him to remain away from work.

Claimant saw the company doctor again on December 18, 1970 and was told then that he was fit to return to work and that he should report back on December 21, 1970. Claimant never did report for work.

There is a difference in explanation of claimant's failure to report. The employer contends that claimant failed to report without having a proper medical excuse and so he was discharged on December 22nd. Claimant argues that the reason for his failure to report on December 21st was that he had been discharged by the employer on December 15th. When the employer's first-aid man, Samuel Ferguson, had called him to inform him of his discharge, no reason was given. Since he had been discharged on December 15th, he assumed he could not report on December 21st.

Testimony was taken at a hearing on claimant's application for unemployment compensation and the Referee found the claimant guilty of wilful misconduct under the Act of December 5, 1936, P. L. 2897, Art. IV, §402, as amended, 43 P.S. §802, and accordingly he was considered ineligible for compensation.

On appeal, the Board, after reviewing the evidence, overruled the decision of the Referee and found the claimant eligible. The Board determined that the claimant was not guilty of wilful misconduct but that the claimant's absences, as medically certified, were due to illness, which were known by the employer.

At the request of the employer, a second hearing was held when the employer reiterated its position. After this reconsideration, the Board affirmed its prior ruling granting compensation. Hence this appeal.

In reviewing a decision of the Unemployment Compensation Board of Review, the findings of the Board are binding upon this Court where there is evidence to support its conclusion. *Toma v. Unemployment Compensation Board of Review*, 4 Pa. Commonwealth Ct. 38, 45, A. 2d (1972). The Board made the following findings of fact: "6. On December 15, 1970 the employer's 'First Aid Man' contacted claimant by phone and advised him that he was discharged. No reason for the discharge was given to the claimant. 7. On December 18, 1970 claimant visited his doctor at which time the doctor released the claimant and advised him he could resume his employment. 8. After being released by his doctor, claimant did not return to his former employer for the stated reason he had been discharged on December 15, 1970."

The issue is whether there is competent testimony in the record to support these findings made by the Board. Appellant contends that the testimony of the claimant was incompetent hearsay because it related

an out of court statement made by the first-aid man the essence of which was that claimant had been discharged. Appellant would have us hold that since the first-aid man did not testify himself, this testimony of the claimant, although subject to cross-examination at the hearing, does not constitute competent evidence upon which the Board could base its decision. We disagree.

Appellant recognizes that the rules of evidence prevailing in courts of law are not controlling in this statutorily regulated proceeding although hearsay, properly objected to, does not constitute competent evidence. *Phillips v. Unemployment Compensation Board,* 152 Pa. Superior Ct. 75, 81, 30 A. 2d 718 (1943). However, it is equally axiomatic that if there is no objection and the evidence is admitted, the evidence may be given its natural probative effect as if it was in law admissible. *Sledzionowski Unemployment Compensation Case,* 168 Pa. Superior Ct. 37, 40, 76 A. 2d 666 (1950). In *Seifing Unemployment Compensation Case,* 159 Pa. Superior Ct. 94, 100, 46 A. 2d 598 (1946) when addressing itself to the competency of hearsay testimony, the Superior Court stated: ". . . it is no answer to suggest that his testimony was hearsay. The act authorizes the board to prescribe rules of procedure 'whether or not such rules conform to common law or statutory rules of evidence and other technical rules of procedure.' Id. §505, 43 P.S. §825. A rule (No. 303) of the board adopted September 30, 1942 provides: 'observance of common law and statutory rules of evidence and technical and formal rules of procedure shall not be required.' And in a comparable area of the law this court and the Supreme Court have held that hearsay testimony taken without objection is properly upon the record, and affords a basis for judgment. *Poluski v. Glen Alden*

Coal Co., 286 Pa. 473, 133 A. 819; Nesbit v. Vandervort & Curry, 128 Pa. Superior Ct. 58, 193 A. 393."

Further, the Supreme Court of this State has ruled that "Even from a purely technical standpoint hearsay evidence, if it is admitted without objection and is relevant and material to the issue, is to be given its natural probative effect and may be received as direct evidence. [Citations]." *Holmes Appeal,* 379 Pa. 599, 109 A. 2d 523 (1954). *See also Shade v. Milk Control Commission,* 196 Pa. Superior Ct. 14, 17, 73 A. 2d 647 (1961).

It is admitted by appellant that there was no objection to the testimony at the hearing. Allusions to the informality of the proceedings do not obviate the necessity of following the rule of law. Under the circumstances, the testimony of the claimant could properly be considered by the Board in reaching a decision.

In reviewing the determination of the Board, the governing rule of law, as stated in *Ristis Unemployment Compensation Case,* 178 Pa. Superior Ct. 400, 403, 116 A. 2d 271 (1955) is: "[T]he credibility of the witnesses, the weight of their testimony, and the reasonable inferences to be drawn from it are for the board. Our duty is performed by studying the testimony in the light most favorable to the party in whose favor the board has found, giving that party the benefit of every inference which can be logically and reasonably drawn from it. Stillman Unemployment Compensation Case, 161 Pa. Superior Ct. 569, 675, 56 A. 2d 380 (1948)."

When there is a conflict between the parties on any issue, it is for the Board to resolve the dispute and any finding on that issue, if supported by evidence, is conclusive. *See France Unemployment Compensation Case,* 205 Pa. Superior Ct. 505, 211 A. 2d 85 (1965).

In *Holland v. Unemployment Compensation Board of Review*, 4 Pa. Commonwealth Ct. 292, 286 A. 2d 19 (1972) we upheld the decision of the Board wherein it resolved a conflict in testimony by giving more weight and credibility to the testimony of one party over the other.

In the instant case, the Board chose to give more weight and credibility to the testimony of claimant than to the evidence proffered by the employer. Since the testimony was competent evidence, that decision is upheld.

Therefore, we issue the following

### ORDER

AND Now, this 29th day of June, 1972, the decision and order of the Unemployment Compensation Board of Review dated July 9, 1971, in re claim of Lawrence Eaddy is hereby affirmed.

---

DISSENTING OPINION BY JUDGE ROGERS:

I cannot agree that this adjudication is supported by substantial evidence. It is founded upon an apparent finding that the claimant of unemployment compensation benefits was discharged from his employment on December 15, 1970. This finding in turn is based solely upon the claimant's testimony that the employer's first-aid man told him in the course of a telephone conversation on that date that he had been discharged. The Board of Review made this finding despite the facts: that on December 18, 1970 the claimant kept an appointment with the company doctor who told him to report to work on December 21, 1970;[1] that on Decem-

---

[1] The Board erroneously and significantly finds this doctor to be the claimant's personal physician. Claimant did in fact consult a personal physician who had last seen him on December 8, 1970.

ber 18, 1970 claimant called at his place of employment where he talked with his employer's payroll supervisor; that the company's records introduced into evidence show that the claimant was not terminated until December 22, 1970; and that the first-aid man's diary[2] shows a conversation with claimant on December 18, 1970 concerning the latter's physical condition. Further, the record contains no evidence whatsoever as to the duties of the first-aid man. His title certainly indicates no authority to discharge or responsibility for advising employes of their discharge. The Board could and did accept the fact that the telephone conversation of December 15, 1970 took place; that conversation was not, however, substantial evidence that the claimant was in fact discharged. It was claimant's burden to prove that he had lost his employment, as distinguished from voluntarily quitting. He did not carry it, in my view, by testimony that a fellow employe, not produced and having no demonstrated authority in the premises, told him he had been discharged. Further, any significance such evidence might have had evaporated in the light of the claimant's conduct in subsequently visiting the company doctor and the payroll supervisor and of his employment records showing his discharge on December 22, 1970.

I would remand this matter to the Board for a determination of whether the claimant quit his employment of his own will or, if not, whether his admitted discharge on December 22, 1970 was for wilful misconduct, described in the company records as "absenteeism and not reporting off." In this connection it is noted that during the four months of his employment with the present employer the claimant was late for work

---

[2] This was admitted into evidence by the referee no less properly than was claimant's hearsay account of his firing by the first-aid man.

six times, absent without stated reason two days, was off for illness five days and absent sixteen days on account of an injury on the job. The record further reveals that the claimant, a union member, did not grieve his discharge.

I dissent.