Woodson *v.* Unemployment Compensation Board of Review (4 Cases).

Argued December 7, 1972, before Judges CRUMLISH, JR., WILKINSON, JR., and MENCER, sitting as a panel of three.

*Harold I. Goodman,* Community Legal Services, Inc., for appellants.

*Sydney Reuben,* Assistant Attorney General, with him *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY JUDGE MENCER, February 9, 1973:

In *James v. Unemployment Compensation Board of Review,* 6 Pa. Commonwealth Ct. 489, 296 A. 2d 288 (1972), we recognized that racial discrimination could be the compelling and necessitous cause for a voluntary termination of employment and, where the record disclosed by substantial evidence that such was the fact, the claimant would be entitled to unemployment compensation benefits.

We are concerned here with appeals in four cases from four orders of the Unemployment Compensation Board of Review (Board) disallowing appeals from adjudications of a Referee denying the claims of four

brothers for unemployment compensation. These appeals raise the question of racial discrimination, not as a factor of a voluntary termination, but as a factor of dismissal by the employer.

Gary Woodson, Lewis Woodson, Ronald Woodson and Lester Woodson (Woodsons) are four brothers who had been employed as tree climbers and groundmen by Asplundh Tree Expert Company (Asplundh), of Jenkintown, Pennsylvania. Their periods of employment with Asplundh ranged from approximately one and one-half years to three and one-half years, and their last day of employment was October 13, 1970. According to Henry Carr, Asplundh's general foreman, the Woodsons "were good workers."

However, on October 13, 1970, Lester Woodson was informed by his crew foreman that he should tell his brothers that the Woodsons were not to come to work the next day. That evening Ronald Woodson called the general foreman, Henry Carr, for some explanation and Mr. Carr responded with these words: "I do not feel right working you if I can't work your brothers, so stay home until further notice." Carr was immediately asked by Lester if he was being fired and Carr responded, "No, I didn't use the word 'fire'." This testimony is undisputed in the record. Nevertheless, the Woodsons did not again work for Asplundh and, when they applied for unemployment compensation, Asplundh responded by asserting that they had been discharged for absentecism and tardiness.

The Referee and the Board found that the Woodsons were discharged on October 13, 1970, for absence from work and tardiness which constituted willful misconduct within the meaning of the provisions of Section 402(e) of the Pennsylvania Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P. L. (1937) 2897, as amended, 43 P.S. §802(e). This section provides, in pertinent part:

"An employe shall be ineligible for compensation for any week—

. . .

"(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. . . ."

In *Harmer Unemployment Compensation Case*, 206 Pa. Superior Ct. 270, 272, 213 A. 2d 221, 223 (1965), the definition of willful misconduct was approved as follows: " 'Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.' "

After warnings from the employer, excessive absenteeism without justification and habitual tardiness have been held to constitute willful misconduct. *McCone Unemployment Compensation Case*, 199 Pa. Superior Ct. 6, 184 A. 2d 275 (1962); *Smeal Unemployment Compensation Case*, 197 Pa. Superior Ct. 555, 180 A. 2d 107 (1962); *Thompson Unemployment Compensation Case*, 199 Pa. Superior Ct. 88, 184 A. 2d 413 (1962); *Backer Unemployment Compensation Case*, 198 Pa. Superior Ct. 184, 181 A. 2d 869 (1962). However, an advance warning is not a prerequisite to justify a discharge for willful misconduct. *Hohnstock Unemployment Compensation Case*, 196 Pa. Superior Ct. 500, 175 A. 2d 167 (1961).

Here the findings of fact, as made by the Referee and as adopted by the Board, establish that, during

the last six months of the Woodsons' employment, they had a record of between 15 days and 27 days of absences and that they were frequently late and were warned regarding their attendance records.[1] The Board reasoned that the Woodsons had received warnings regarding their poor attendance records and, subsequent thereto, continued to be late and absent and were finally discharged for reason and accordingly such circumstances constituted willful misconduct within the meaning of Section 402(e).

An examination of the record discloses that the Woodsons did not seriously dispute the absence and tardiness aspects of this case. However, they did dispute the warnings allegedly given by the employer and did contend that many of the absences and most of the tardiness were explainable or excusable. Further, the Woodsons contended that the real reason for their discharge was not their rather poor record of attendance and their frequent tardiness, but rather that it was a result of racial discrimination. To support this contention, evidence was offered that, during the first nine months of 1970, there were Caucasian employees of Asplundh who worked fewer hours than the Woodsons and who were not discharged. The weakness of the proof offered in this regard is that it fails to disclose whether the Caucasian employees were full-time employees or whether or not there was any legally permissible reason for the absences, if any, attributable by the Woodsons to the time records of the Caucasians. Although the Woodsons' contention in this record is disturbing, the proof offered to support it is not conclusive, under any objective view of such proof. More

---

[1] Ronald Woodson was found absent 15 days; Lester Woodson, 19 days; Lewis Woodson, 24 days; and Gary Woodson 27 days. Each was found to be frequently late, and each was warned regarding his attendance record.

important, it is the Board's, not our, province to pass upon what weight should be given to such evidence.

We repeat here what we said in *James v. Unemployment Compensation Board of Review*, supra:

"The scope of review by this Court is outlined in Section 510 of the Pennsylvania Unemployment Compensation Law, 43 P.S. §830, wherein it is stated: 'In any appeal . . . the findings of the board or the referee, as the case may be, as to the facts, if supported by the evidence and in the absence of fraud, shall be conclusive, and in such cases the jurisdiction of the court shall be confined to questions of law. . . .'

"This Court in recent cases has followed the holding of the Pennsylvania Superior Court in the case of Ristis Unemployment Compensation Case, 178 Pa. Superior Ct. 400, 116 A. 2d 271 (1955), where the court stated: ' "The credibility of the witnesses, the weight of their testimony, and the reasonable inferences to be drawn from it are for the board. Our duty is performed by studying the testimony in the light most favorable to the party in whose favor the board has found, giving that party the benefit of every inference which can be logically and reasonably drawn from it." ' (Citations omitted.) 178 Pa. Superior Ct. at 403, 116 A. 2d at 272. See Cleaver v. Unemployment Compensation Board of Review, 5 Pa. Commonwealth Ct. 255, 290 A. 2d 279 (1972), and Philadelphia Coke Division, Eastern Associated Coal Corporation v. Unemployment Compensation Board of Review, 6 Pa. Commonwealth Ct. 37, 293 A. 2d 129 (1972).

"In reviewing the record made before the Referee, we must also take notice that the burden of proving a right to unemployment compensation rests with the claimant. See Smith Unemployment Compensation case, 167 Pa. Superior Ct. 242, 74 A. 2d 523 (1950)." 6 Pa. Commonwealth Ct. at 491-92, 296 A. 2d at 289.

After a reading and rereading of the entire record, we must conclude that the findings of fact of the Referee which were adopted and affirmed by the Board are supported by the evidence in the record. Although the record discloses reference to possible racial discrimination in working conditions, we are unable to conclude that the record in this case discloses, by substantial evidence, that the Woodsons' discharge from their employment was due to racial discrimination and not because of their poor work attendance records and their tardiness pattern.

Therefore, we decide that in these cases the Woodsons failed to carry their burden of proving that they were entitled to unemployment compensation.

Order affirmed.