526 A.2d 1253

Edwin Rivera, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs November 17, 1986, to Judges BARRY and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Jeffrey L. Greenwald, Lehigh Valley Legal Services,* for petitioner.

*Jonathan Zorach,* Associate Counsel, with him, *Paul E. Baker,* Acting Deputy Chief Counsel, for respondent.

OPINION BY JUDGE BARRY, June 5, 1987:

Claimant, Edwin Rivera, seeks review of an order of the Unemployment Compensation Board of Review (Board) which affirmed a referee's decision denying his claim for unemployment compensation. We affirm.

Claimant worked in J. G. Furniture Systems, an upholstery plant. His job included the use of staple guns, capable of shooting nails (called "brads"), which were

used in the manufacturing process. On the day in question, one Christian Heidlemark (Heidlemark), a fellow employee, shot claimant with such a gun. He was told by claimant to stop, but he again shot claimant three times in his chest, whereupon claimant shot Heidlemark once in the leg. An altercation followed and claimant was pushed over a skid by Heidlemark. The employer discharged both for fighting. The rules of the company, which included a rule against fighting, were displayed on bulletin boards throughout the plant.

An unemployed worker can be denied benefits for willful misconduct connected with his work pursuant to Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Willful misconduct is established when the employee's behavior constitutes a "wanton and willful disregard of an employer's interest, a deliberate violation of the employer's rules, a disregard of expected standards of behavior, . . . or an intentional disregard of the employer's interest or the employee's duties and obligations to the employer." *Kronstadt v. Unemployment Compensation Board of Review*, 88 Pa. Commonwealth Ct. 318, 489 A.2d 310 (1985); *Harris v. Unemployment Compensation Board of Review*, 67 Pa. Commonwealth Ct. 537, 447 A.2d 1060 (1982).

The employer's representative testified that fighting with nail guns was considered a serious offense, "because even though they were small nails, they could take out an eye if it caught the person at just the right angle, through the safety glasses or behind the safety glasses." It endangered other employees in the area.

The referee found that claimant's conduct constituted willful misconduct and, because he could have retreated from the other employee, his defense of "good cause" was rejected.

In willful misconduct cases, the burden of establishing the claimant's ineligibility for unemployment compensation is on the employer. *Placid v. Unemployment Compensation Board of Review,* 58 Pa. Commonwealth Ct. 250, 427 A.2d 748 (1981). Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

Initially, claimant contends that the employer failed to prove that claimant was "fighting" and, in addition, failed to establish the existence of a rule prohibiting the type of "horseplay" in which the two engaged. The referee found that Heidlemark shot claimant with a staple gun, was told by claimant to stop, that Heidlemark shot the claimant three more times in his chest and that claimant picked up his own staple gun and shot Heidlemark in the leg. Heidlemark then retaliated by pushing claimant over a skid. Claimant did not physically retaliate but did so verbally. The record confirms that this was much more than "horseplay", that obvious ill will existed between claimant and Heidlemark and that, although the claimant cannot be accused of provoking this unfortunate incident, it was a "fight" in which he participated. The fact that fighting was forbidden on the work premises is well established in the record. It should be noted that even in the absence of a written policy, fighting is considered inimical to the best interests of the employer and, as such, willful misconduct. *See Unemployment Compensation Board of Review v. Vojtas,* 23 Pa. Commonwealth Ct. 431, 351 A.2d 700 (1976). We believe that the referee's conclusion that employer met his burden of proving that

claimant violated a work rule by fighting is amply supported in the record.

Claimant next contends that his actions were *de minimis* and, as such, do not rise to the level of willful misconduct. We disagree wholeheartedly. The aggressor, Heidlemark and claimant both shot three-quarter inch 16-gauge nails with a bevelled point on either side at one another. Although we agree that these nails do not have the sharp and dangerous point of a regular nail, they, nevertheless, have the potential to seriously hurt another individual if that individual were struck at the proper angle. This is the precise reason for the employer's rule and, we believe, that a violation of this rule, even with some degree of provocation, is not *de minimis*. Claimant's reliance on *Williams v. Unemployement Compensation Board of Review,* 32 Pa. Commonwealth Ct. 641, 380 A.2d 932 (1977), (Discharge for failure to notify the employer in writing every seventh day of employee's absence when employee had already notified claimant that he would be absent for at least two weeks due to a wrist injury did not rise to the level of willful misconduct when employee had good history of work attendance in past), is misplaced. *Williams,* and the cases cited therein for support of claimant's position, can easily be distinguished from the present case. None of those cases involve the threat or the possibility of serious injury to another employee.

Claimant, referring specifically to Heidlemark's provocation of other co-workers in the same manner, maintains that he could not have been aware of the employer's standard of conduct inasmuch as employer inconsistently enforced this standard. Claimant presented the witness of a co-worker, Kathy Fox, who testified that she, too, was hit by brads from Heidlemark's staple gun but Heidlemark was not disciplined nor did the employer revise the rules to require severe discipline in that

situation. Claimant cites *Woodson v. Unemployment Compensation Board of Review,* 461 Pa. 439, 336 A.2d 867 (1975). In *Woodson,* the Supreme Court held that an employer could not sanction an inconsistent application of company rules which resulted in racial discrimination. In the case before us, the claimant fails to produce any evidence which would suggest that the employer knew of any other incidences in which two employees engaged in a "brad" gun shooting match. The evidence adduced by claimant does show that Heidlemark shot other employees with the gun but goes no further. It is clear that only one other incident was reported to a plant manager and there is no evidence that the personnel manager, Mr. Graham, who is responsible for hiring and discharging and enforcing disciplinary policy, was aware of these other incidents. The plant manager, who apparently dismissed the other incident as mild horseplay, does not set company policy and his refusal to take more serious disciplinary action against Heidlemark cannot be considered as reflective of the company's policy toward that behavior. *See Sommers v. Unemployment Compensation Board of Review,* 56 Pa. Commonwealth Ct. 275, 424 A.2d 619 (1981).

Finally, the claimant argues that he had good cause for reacting in this manner because his actions were reflexive—an almost compulsive reaction—as to the provocation by Heidlemark. He cites the case of *Costa v. Unemployment Compensation Board of Review,* 31 Pa. Commonwealth Ct. 7, 374 A.2d 1012 (1977) in which this Court held that an abrasive, vulgar or offensive remark does not constitute willful misconduct if the remark is justifiably provoked and is of a *de minimis* nature. For obvious reasons, this is not applicable to the present case. The conduct here was not a remark but involved claimant's participation in a potentially dangerous confrontation with a co-worker. Moreover, the

referee, rejecting claimant's testimony on this issue, found that claimant's reaction was not a "reflex" action but was more calculated and that claimant could have retreated instead of participating in the confrontation and thereby escalating it. We are bound by this credibility determination. *Swope v. Unemployment Compensation Board of Review*, 91 Pa. Commonwealth Ct. 459, 497 A.2d 289 (1985). This Court has held that when an employee could have retreated and sought assistance but instead willingly continued and escalated the confrontation those actions were neither reasonable nor justifiable and did not constitute good cause. *See Jones v. Unemployment Compensation Board of Review*, 75 Pa. Commonwealth Ct. 619, 462 A.2d 950 (1983).

Accordingly, we affirm the Board.

## ORDER

NOW, June 5, 1987, the order of the Unemployment Compensation Board of Review, dated January 8, 1985, at No. B-237262, is affirmed.

---

DISSENTING OPINION BY SENIOR JUDGE KALISH:

I respectfully dissent.

The referee concluded that claimant's conduct constituted willful misconduct because he could have retreated from the other employee, and by his failure to do so, his defense of "good cause" was negated. Thus, it is apparent that the referee concluded that since there was no justification for claimant's conduct, it constituted "fighting" which was a violation of company rules.

"Fighting" is an intentional infliction or intent to inflict bodily harm upon one another by the participants. It is the *intention* which makes the event a "fight." If the claimant's conduct is justified under the circumstances, the intent is nullified or at least it shows that his conduct was reasonable.

Here, the referee's conclusion that there was no justification and that he could have retreated is not supported by substantial evidence. The record shows that Heidlemark assaulted claimant without provocation on three different occasions, resulting in three nails from the nail gun being imbedded in claimant's chest. This is seriously harmful conduct. Claimant responded with one shot to Heidlemark's leg.

Under the circumstances, claimant could have a well-grounded and reasonable belief that he was in danger of serious bodily harm. The duty to retreat to a place of safety applies to a situation where deadly force is used. And even there it applies where retreat can be made with complete safety. The one shot to Heidlemark's leg can hardly be said to be deadly force. Furthermore, the record shows that even if claimant attempted to retreat, he would have had to pass his assailant, and it would not have been a reasonable escape.

The employer has the burden of showing willful misconduct. The inference drawn by the Board that claimant's conduct reached a level of willful misconduct was neither reasonable nor natural, and was therefore an error of law.