# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hector Santana,                          :
                   Petitioner    :
                            :
              v.                       :   No. 424 C.D. 2016
                            :   Submitted:  July 29, 2016
Unemployment Compensation                :
Board of Review,                         :
                 Respondent    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**         **FILED:  November 15, 2016**

Hector Santana (Claimant) petitions for review of the February 25, 2016 Order of the Unemployment Compensation (UC) Board of Review (Board) affirming a UC Referee's (Referee) Decision finding Claimant ineligible for UC benefits pursuant to Section 402(e) of the UC Law (Law).[1]  On appeal, Claimant raises two broad challenges:  (1) the Board erred by finding that his conduct constituted willful misconduct because he was disparately treated by his employer,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e).  Section 402(e) provides that an employee is ineligible for UC benefits if "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work."  Id.

North American Machine Works (Employer), when Employer terminated Claimant, but failed to terminate a similarly situated employee for the same conduct; and (2) the Board's Decision is not supported by substantial evidence because it failed to consider all of the evidence demonstrating that Claimant acted in self-defense in accord with Miller v. Unemployment Compensation Board of Review, 83 A.3d 484 (Pa. Cmwlth. 2014). We affirm.

Claimant was employed by Employer as a full-time valve technician from March 2010 to October 30, 2015, when he engaged in a physical altercation with his coworker, Raymond Rios. (Board Decision, Findings of Fact (FOF) ¶¶ 1, 12.) On November 2, 2015, Employer discharged Claimant for fighting in the workplace. Mr. Rios was not discharged. The events that took place on October 30, 2015, are the subject of the instant dispute.

Claimant applied for UC benefits on November 2, 2015, stating that he was discharged for fighting. (Internet Initial Claims, C.R. at 2.) Claimant stated that there was an incident "over an issue about a scratch on my car [. . .] the argument continued and the other employe[e] grabb[]ed a board and threatened to hit me. [I] grabbed the board and hit the other employee." (Claimant Questionnaire, C.R. at 4.) Claimant checked the box on the questionnaire to indicate he was fighting out of self-defense alone. (Id.) Employer did not respond to Claimant's claim for UC benefits. (Request for Employer Separation Information, C.R. at 3 (indicating no response received from Employer).)

The UC Service Center issued a Notice of Determination on November 16, 2015, finding Claimant not ineligible for UC benefits pursuant to Section 402(e) of the Law. (Notice of Determination, C.R. at 5.) The UC Service Center determined that "Claimant was fighting in self-defense alone and, as such, had good cause for

2

fighting. Th[us], Claimant's actions do not constitute willful misconduct . . . ." (Id.) Accordingly, the UC Service Center concluded that Claimant was eligible for benefits beginning with the waiting week ending November 7, 2015. (Id.)

Employer appealed to the Referee. In its petition, Employer explained that Claimant was not acting in self-defense, but that he "started the fight by pushing a fellow employee to the ground during an argument." (Petition for Appeal, C.R. at 6.) Employer stated that there was another employee who witnessed the incident. (Id.) A hearing on Employer's appeal was held before the Referee on January 7, 2016.[2] Claimant appeared, with counsel, and testified. Employer appeared with three witnesses: Larry Picciani, Vice President/General Manager; Mr. Rios, Inside Sales; and Carl Mintz, Safety Valve Technician.

Mr. Picciani testified that the general manager of the valve shop was the first person to report to him that Claimant attacked Mr. Rios at lunch time and that Mr. Mintz witnessed the fight. Mr. Picciani recalled that Claimant gave a different version of events than Mr. Mintz's account, and that Claimant stated "[Mr. Rios] had a stick" and Claimant was allegedly threatened by the stick. (Hr'g Tr. at 7.) Mr. Picciani noted that Employer does not have a written policy that prohibits fighting at work, but employees should know "it's a crime to attack someone." (Id. at 8.)

Mr. Rios testified that he was supposed to play football with Claimant at lunch when Claimant confronted him about pretending to key Claimant's car, and that he was confused about the situation. (Id. at 9.) Mr. Rios stated that Claimant

---

[2] The hearing was continued from December 17, 2015, so that Claimant could obtain counsel. Counsel entered his appearance on behalf of Claimant on January 5, 2016. (Entry of Appearance, C.R. at 9.)

3

came right up to his face and that is when they started arguing back and forth. Mr. Rios testified that Claimant pushed him, which caused him to fall onto a stack of skids, and then Mr. Rios grabbed a "three foot brittle piece of stick" to keep Claimant away from him. (Hr'g Tr. at 9, 11.) Mr. Rios stated that he never raised the stick in a defensive manner and that after he put the stick down, Claimant punched him in the face. (Id. at 9-10.) Mr. Rios explained that as he stood up, Claimant backed up and Mr. Mintz told Claimant to stop. Mr. Rios stated that he stood up calmly and walked away. Mr. Rios maintained that he did not throw the first punch. (Id. at 22.)

Mr. Mintz testified as to what he observed on October 30, 2015. He explained that Claimant pushed Mr. Rios back towards the skids, Mr. Rios picked up a small stick, Claimant grabbed Mr. Rios' arm and twisted it and then punched Mr. Rios twice, after which Mr. Rios fell to the ground, and was struck again on the ground. (Id. at 13.) Mr. Mintz testified that Claimant and Mr. Rios always argue like this, although they have not physically fought before. Mr. Mintz stated that he was on the phone with his wife, which was why he did not tell Claimant and Mr. Rios to stop until after Mr. Rios was hit. (Id.) Mr. Mintz testified that Mr. Rios got up after being punched and walked inside.

Claimant testified that he confronted Mr. Rios about a gesture Mr. Rios made near Claimant's car, and that Mr. Rios got in Claimant's face. He stated that they were close to each other "chest to chest," and that Mr. Rios then told Claimant "I'm going to hit you" and started emptying his pockets. (Id. at 15.) Claimant admitted that he pushed Mr. Rios away and that Mr. Rios fell to the ground. Claimant stated that Mr. Rios ran about 10 feet away to get the stick, and then Claimant went over to Mr. Rios to hold the stick away and tell him to stop. (Id. at

4

16.) Claimant testified that Mr. Rios took a swing at him, and that was when Claimant hit Mr. Rios back and he fell to the ground. (Id.) Claimant stated that he "immediately backed away from [Mr. Rios] and when I backed away from him [Mr. Rios] got up and started coming towards me and I kept pushing him – I kept telling him it's over, that's it." (Hr'g Tr. at 16.) Claimant noted that Mr. Mintz never came over to break up the fight. (Id. at 16-17.) In response to questions from the Referee, Claimant agreed that he could have backed up before the physical altercation began, but stated that he did not leave the parking lot because he felt threatened. (Id. at 15-16.) In response to a question posed by Claimant's counsel, Claimant stated he felt threatened when he and Mr. Rios were chest to chest and when Mr. Rios grabbed the stick. (Id. at 17.) Claimant described the stick as "a two by four and it had a nail at the end." (Id. at 19.) At the end of the hearing, Claimant's counsel asserted that Claimant reasonably acted in self-defense. (Id. at 23.)

The Referee, acknowledging that there were conflicts in the evidence as to what actually happened on October 30, 2015, credited the testimony of Employer's witnesses over Claimant's testimony. (Referee Decision at 2.) The Referee concluded that even if Claimant's testimony was credible, Claimant willingly participated in the verbal altercation, which ended in physical violence, and Claimant had numerous opportunities to remove himself from the situation prior to engaging in any violence but he did not do so. (Id.) The Referee found that "[C]laimant was the aggressor in the matter, physically assaulted his co-worker, [and] thus engaged in willful misconduct." (Id.) Accordingly, the Referee rejected Claimant's self-defense claim, reversed the UC Service Center's determination,

5

and found that Claimant was ineligible for benefits under Section 402(e) of the Law. Claimant appealed to the Board.

In his appeal to the Board, Claimant argued that the Referee failed to consider the totality of the circumstances, such that the Referee Decision is not supported by substantial evidence, and erred in finding willful misconduct and in applying the law on self-defense. (C.R. at 12.) In his brief to the Board,[3] Claimant argued that "retreat" is not an element of self-defense, relying on the test set forth in our decision in <u>Miller</u>, 83 A.3d 484, as support. (Claimant's Br. to the Board at 2, C.R. at 15.) Claimant also contended that there is no substantial evidence of record to support the notion that he "was the aggressor in the matter." (<u>Id.</u> at 5.)

The Board affirmed the Referee, but made its own findings of fact:

1. The claimant was last employed as a full-time valve technician by North American Machine Works from March 2010, until October 30, 2015, at a final rate of $23.00 per hour.

2. On October 30, 2015, the claimant and another employee, Carl Mintz, were in the parking lot during their lunch break.

3. A third employee, Raymond Rios, returned from lunch.

4. The claimant confronted Rios in the parking lot because the claimant believed that Rios had pretended to key the claimant's car.

5. The claimant and Rios engaged in a heated verbal altercation.

6. The claimant pushed Rios onto the ground.

7. Rios picked up a piece of a large skid; Rios was approximately 10 feet from the claimant at that time.

---

[3] Claimant's counsel requested to file a brief with the Board, which was granted. (Board Letter, C.R. at 14.)

8. The claimant walked over to Rios.

9. Rios threatened to hit the claimant with the piece of wood.

10. The claimant held Rios' hand back, but then let it go.

11. Rios swung the wood at the claimant.

12. The claimant punched Rios in the face.

13. The claimant backed away from Rios.

14. Mintz told the claimant to stop and broke up the fight.

15. The employer discharged the claimant for hitting Rios.

(FOF ¶¶ 1-15.) Like the Referee, the Board acknowledged the conflicts in the testimony regarding the details of the incident. However, the Board concluded that it was undisputed "that the [C]laimant confronted Rios and started the altercation . . . [and] that the [C]laimant pushed Rios onto the ground." (Board Decision at 2.) The Board found that Claimant could have walked away, but instead, he "went towards Rios and re-engaged Rios." (Id.) The Board also found Claimant credible that Rios threatened to hit Claimant with the piece of wood, Rios did swing the wood at Claimant, and then Claimant punched Rios in the face and "immediately backed away." (Id. at 3.) The Board concluded that Claimant did not act in self-defense because he "did not testify that his actions were reactive or that it was a reflex[,]" and that Claimant's actions in initiating a fight and physically assaulting his co-worker were below the standards of behavior Employer had a right to expect from its employees. (Id.) Accordingly, the Board concluded that Claimant was ineligible for benefits under Section 402(e) of the Law. (Board Decision,

7

Conclusion of Law.) Claimant filed a request for reconsideration, which the Board denied. Claimant now petitions this Court for review of the Board's Order.[4]

On appeal, Claimant argues that he did not commit willful misconduct because he was subject to disparate treatment by Employer when Employer terminated Claimant, but failed to terminate Mr. Rios, a similarly situated employee, for the same conduct. (Claimant's Br. at 3.) Claimant contends that the Board's Decision is not supported by substantial evidence demonstrating that he acted in self-defense. Specifically, he argues that retreat is not a requirement of self-defense, and that the Board erred in relying on the absence of any testimony by Claimant that his actions were "reactive" or the result of a "reflex." (Id. at 6, 8.)

In response, the Board argues that substantial evidence supports that Claimant did not act in self-defense, and that Claimant acted below the standards of behavior that Employer had a right to expect from its employees when Claimant confronted Mr. Rios and physically assaulted him in the parking lot. The Board contends that Claimant's actions "were more akin to retaliation" than self-defense;

---

[4] This Court's scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact were supported by substantial evidence. Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014). The Board is the factfinder in UC cases and is, thus, empowered to make credibility determinations and resolve conflicts in the evidence presented. Curran v. Unemployment Comp. Bd. of Review, 752 A.2d 938, 940 (Pa. Cmwlth. 2000). The Board's findings are conclusive on appeal if the record, as a whole, is supported by substantial evidence. Mathis v. Unemployment Comp. Bd. of Review, 64 A.3d 293, 299 (Pa. Cmwlth. 2013). We view the record in the light most favorable to the party that prevailed before the Board, and we afford that party the benefit of all reasonable inferences that can be drawn from the evidence to determine if substantial evidence exists. Big Mountain Imaging v. Unemployment Comp. Bd. of Review, 48 A.3d 492, 494-95 (Pa. Cmwlth. 2012). "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a conclusion." American Gen. Life and Accident Ins. Co. v. Unemployment Comp. Bd. of Review, 648 A.2d 1245, 1248 (Pa. Cmwlth. 1994).

8

Claimant was the aggressor and escalated the situation, and Claimant did not act in "a reflexive or instantaneous manner." (Board's Br. at 10, 12.)[5]

Section 402(e) of the UC Law provides, in pertinent part, that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. § 802(e). While the Law does not define "willful misconduct," our Court has defined it as:

> (1) a wanton or willful disregard for an employer's interests; (2) a deliberate violation of an employer's rules; (3) a disregard for standards of behavior which an employer can rightfully expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

Phila. Parking Auth. v. Unemployment Comp. Bd. of Review, 1 A.3d 965, 968 (Pa. Cmwlth. 2010). Employer bears the burden of proving willful misconduct. Walsh v. Unemployment Comp. Bd. of Review, 943 A.2d 363, 368 (Pa. Cmwlth. 2008). "[F]ighting is considered inimical to the best interests of the employer and, as such, [it is] willful misconduct." Rivera v. Unemployment Comp. Bd. of Review, 526 A.2d 1253, 1255 (Pa. Cmwlth. 1987). "Even in the absence of a written policy [prohibiting fighting in the workplace], fighting may be considered a disregard of the standards of behavior that an employer can expect from its employees, even when the claimant was not the initial aggressor." Miller, 83 A.3d at 487 (citations omitted). In certain situations, it is justifiable to use reasonable force in self-defense. Id. (citing Sun Oil Co. v. Unemployment Comp. Bd. of Review, 408 A.2d 1169, 1171 (Pa. Cmwlth. 1979) ("A reasonable belief of

[5] For clarity purposes, we will reorder Claimant's arguments.

9

imminent bodily harm and feared danger of an assault justifies reasonable retaliatory force.")). "Where an employee's conduct is justifiable or reasonable under the circumstances, it cannot be considered willful misconduct because it is not a willful disregard of standards of behavior that an employer has a right to expect." Miller, 83 A.3d at 488 (citation omitted). However, in situations where a claimant could retreat and seek help but instead willingly continues to escalate the situation, the claimant's actions are "neither reasonable nor justifiable and [do] not constitute good cause." Rivera, 526 A.2d at 1256 (citation omitted).

Claimant does not dispute "that violence should not occur in the work place and would be willful misconduct with or without an employee handbook." (Hr'g Tr. at 23.) Rather, Claimant argues that the Board's Decision is not supported by substantial evidence because it failed to consider all of the evidence demonstrating that he acted in self-defense. Specifically, Claimant argues that he was the only person to attempt to de-escalate the situation and that he had a reasonable belief of imminent bodily harm. (Claimant's Br. at 11.) We note, initially, that "[r]econstructing the facts of an emotionally charged incident is a difficult task and belongs to the Board." Wolfe v. Unemployment Comp. Bd. of Review, 425 A.2d 1218, 1219 (Pa. Cmwlth. 1981). In this case, both Claimant and Employer's witnesses testified, and there was conflicting factual testimony about the verbal argument and physical altercation that occurred on October 30, 2015. Given the conflicting testimony, the Board properly exercised its role as factfinder and chose to credit the testimony of Employer's witnesses over that of Claimant. Curran v. Unemployment Comp. Bd. of Review, 752 A.2d 938, 940 (Pa. Cmwlth. 2000). The Board concluded that Claimant's conduct constituted willful misconduct because "[C]laimant's actions of initiating an altercation and physically assaulting

10

his coworker were below the standard[s] of behavior . . . [E]mployer had a right to expect." (Board Decision at 3.) The Board also expressly considered whether Claimant's conduct constituted self-defense, and concluded that it did not. (Id.) We agree.

Notably, the Board did not find that Claimant tried to de-escalate the situation or that Claimant's action in punching Mr. Rios "was an instantaneous and reflexive reaction" in response to "imminent bodily harm and feared danger of an assault." See Miller, 83 A.3d at 487-88 (finding that the claimant first "attempted to diffuse the situation," and when the claimant's coworker grabbed the claimant's shirt, threatened him, and shoved him, the claimant responded by pushing his coworker back, which was considered to be "an instantaneous and reflexive reaction" to the claimant's fear that bodily harm was imminent, and the claimant had the right to protect himself). Here, the Board recognized that it is undisputed that Claimant confronted Mr. Rios and started the fight by pushing Mr. Rios on the ground. (Board Decision at 2; Hr'g Tr. at 9, 11, 15.) Mr. Rios, Mr. Mintz, and Claimant testified that Mr. Rios grabbed a stick, which was approximately 10 feet away from Claimant, and that Claimant, instead of walking away or maintaining his distance, which he admits he could have done, went back over to Mr. Rios to engage in a physical fight by grabbing Mr. Rios' arm. (Board Decision at 2-3; Hr'g Tr. at 9-11, 13, 15-16.) Although the Board credited Claimant's testimony that Mr. Rios threatened to hit Claimant with the stick and swung the stick at Claimant, it did not find Claimant's testimony that he felt threatened to be credible. (Board Decision at 2-3; Hr'g Tr. at 15-16.) If Claimant truly felt threatened by Mr. Rios' actions, he could have walked away from the physical altercation; instead, he made the decision to walk back to Mr. Rios, grab his arm, and then punch Mr. Rios

11

in the face before backing away. (Hr'g Tr. at 16.) In addition, to the extent that Claimant felt threatened when Mr. Rios swung at him, Claimant put himself in that position by walking over to Mr. Rios. Because Claimant continued to escalate the situation, we conclude that Claimant's actions are neither reasonable nor justifiable under the circumstances in this case and, thus, constitute willful misconduct. Rivera, 526 A.2d at 1256. The testimony as described is substantial evidence of record which supports the Board's findings of fact, which are conclusive on appeal, and the Board did not err in finding Claimant ineligible for UC benefits. Mathis v. Unemployment Comp. Bd. of Review, 64 A.3d 293, 299 (Pa. Cmwlth. 2013).

Claimant also argues that he was disparately treated by Employer. In response, the Board argues that Claimant waived this issue by not raising it before either the Referee or the Board. In the alternative, the Board contends that Claimant did not establish the necessary elements of the disparate treatment defense.

Section 703(a) of the Administrative Agency Law, 2 Pa. C.S. § 703(a), provides that "[a] party who proceeded before a Commonwealth agency under the terms of a particular statute shall not be precluded from questioning the validity of the statute in the appeal, but such party may not raise upon appeal any other question not raised before the agency . . . ." Likewise, Rule 1551(a) of the Pennsylvania Rules of Appellate Procedure provides that "[n]o question shall be heard or considered by the court which was not raised before the government unit." Pa. R.A.P. 1551(a). We previously held that a "matter is not properly before us not having been raised before the Referee or the Board. The reason for this rule is well exemplified by the present case for had it been raised, there would have been an

12

opportunity to establish the facts on the record." Zakrzewski v. Unemployment Comp. Bd. of Review, 381 A.2d 503, 504 (Pa. Cmwlth. 1978).

Claimant did not argue before the Referee or the Board that he was disparately treated by Employer because he was fired and Mr. Rios was not, and neither the Referee nor the Board considered the defense in their respective decisions. (See Claimant's Arguments, Hr'g Tr. at 23; C.R. at 12, 15.)[6] Claimant raised this defense for the first time in his request for reconsideration of the Board's Decision. (C.R. at 17.) Because Claimant's alleged disparate treatment was not raised in the proceedings, there was no opportunity to establish the facts pertaining to the elements of the defense on the record before the Referee or the Board. Therefore, the defense of disparate treatment is waived.[7]

_____

[6] In his brief to the Board, Claimant argues that Employer's "policy" was indiscriminately enforced and, as such, it was not really a "policy." (Claimant's Br. to the Board at 2, C.R. at 15.)

[7] Were we to consider the merits of the defense, we would hold that Claimant has not met his burden of demonstrating the three required elements of the defense on this record. Disparate treatment is an affirmative defense by which a claimant who has engaged in willful misconduct may still receive benefits if the claimant makes an initial showing that: (1) the employer discharged claimant, but did not discharge other employees that engaged in similar conduct; (2) the claimant was similarly situated to the other employees who were not discharged; and (3) the employer discharged the claimant based on improper criteria. Geisinger Health Plan v. Unemployment Comp. Bd. of Review, 964 A.2d 970, 974 (Pa. Cmwlth. 2009). "[T]he mere fact that one employee is discharged for willful misconduct and others are not discharged for the same conduct does not establish disparate treatment." Id. at 975 (citing Am. Racing Equip., Inc. v. Unemployment Comp. Bd. of Review, 601 A.2d 480, 483 (Pa. Cmwlth. 1991)). In determining whether employees are "similarly situated," this Court has considered the severity of a claimant's conduct, as compared to the conduct of other employees. Id. at 976.

Here, Claimant satisfies the first element of the defense because he demonstrated at the Referee hearing that he was fired for fighting, while Mr. Rios was not. (Hr'g Tr. at 22.) As for the second and third elements, Claimant neither submitted evidence that he was similarly situated to Mr. Rios, who allegedly engaged in the same conduct as Claimant but was not fired, nor did Claimant submit evidence that his dismissal was based on improper criteria. Claimant appears to argue that Employer's policy, or lack of policy, on fighting in the workplace "was not uniformly

*(Continued…)*

Based on the foregoing reasons, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

---

nor consistently applied," however, Claimant fails to fully develop this argument in his brief or connect it in any way to the required elements of a disparate treatment defense. (Claimant's Br. at 7.) Therefore, Claimant has not met his burden of proving disparate treatment.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hector Santana, : 
              Petitioner : 
               : 
          v. :   No. 424 C.D. 2016
               : 
Unemployment Compensation : 
Board of Review, : 
              Respondent : 

## **O R D E R**

**NOW**, November 15, 2016, the February 25, 2016 Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____

**RENÉE COHN JUBELIRER,** Judge