IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Holdings Acquisition Co., L.P.,    :
d/b/a Rivers Casino,       :
     Petitioner     :
            :
     v.        : No. 135 C.D. 2015
            : Submitted: July 24, 2015
Unemployment Compensation   :
Board of Review,       :
     Respondent    :


BEFORE:  HONORABLE DAN PELLEGRINI, President Judge
     HONORABLE MARY HANNAH LEAVITT, Judge
     HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT          FILED: October 19, 2015


    Holdings Acquisition Co., L.P. d/b/a/ Rivers Casino (Employer) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) holding that Mark Miller (Claimant) was eligible for unemployment compensation because he did not commit willful misconduct within the meaning of Section 402(e) of the Unemployment Compensation Law (Law).[1] In so doing, the Board reversed the decision of a Referee. Employer argues that the Board erred because it focused on whether Claimant used profanity and not on whether Claimant's conduct *in toto* constituted rude and discourteous behavior toward one of Employer's customers in violation of a work rule. Employer also

_____

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

asserts that the Board's finding that Claimant did not use profanity is not supported by substantial evidence. We affirm.

Claimant worked for Employer as an entry security administrator from May 20, 2012, to September 22, 2014, earning $14 per hour. Claimant's primary job was to make sure guests entering Employer's casino were at least 21 years old. Employer discharged Claimant for using profanity and being rude to a casino guest on September 1, 2014. The Allentown UC Service Center denied Claimant's application for unemployment compensation for the stated reason that Claimant committed willful misconduct. Claimant appealed, and a hearing was held before a Referee.

At the Referee hearing, Andre Barnabei, Vice President of Human Resources, testified for Employer. He explained that Employer places a very strong emphasis on guest services. Accordingly, Employer's handbook prohibits "obscene gestures, cursing, or the use of foul language that may be offensive to others." Reproduced Record at 109a (R.R. ___). It also prohibits "disrespectful conduct" and "[r]ude and/or discourteous behavior toward guests[.]" R.R. 109a-10a. Barnabei offered copies of Claimant's signed acknowledgement of the handbook and relevant updates.

Barnabei testified that he received a complaint from a customer that Claimant had been rude to her son and improperly refused him entry to the casino. The complainant did not witness the incident.

Several days later, on September 4, 2014, the guest in question completed an incident report. His report alleged that Claimant stopped him as he entered the gaming area of the casino and asked for age identification. After the guest produced the identification, Claimant refused to let go of the card. The

2

report went on to state that the guest, who is 36 years old, reminded Claimant that he was a frequent visitor to the casino. Claimant responded "you think you['re] fucking tough you can leave." R.R. 203a. When the guest explained to Claimant that he was just trying to be nice, Claimant said "well you can leave and don't come back." *Id*. While walking away, the guest turned and again said "I was just trying to be nice." *Id*. Claimant did not respond.

Barnabei reviewed a surveillance video of the incident.[2] Barnabei testified that the video showed Claimant moving from behind his podium toward the guest. Barnabei also interviewed another entry security administrator, Lawrence Lau, who was working near Claimant at the time of the incident. Lau completed an incident report. Lau's report stated that when Claimant asked the guest for identification, the guest responded, "I'm in here every day, why are you carding me." R.R. 204a. According to Lau, the guest "kind of cornered [Claimant]" and "was rather close to him," prompting Claimant to step closer to the guest and state, "do you think you['re] fucking tough stepping to me like that." *Id*. The guest replied, "I just don't understand why you['re] carding me I am 36 years old[;] I am a black card member[;] I'm in here every day." *Id*. Lau reported that Claimant told the guest he was not going to let him in tonight because "I don't like your attitude." *Id*. As the guest was leaving, he turned around and yelled "I am a black card member" and Claimant responded, "Sir, have a good night." R.R. 205a.

Barnabei interviewed Claimant, who denied using "the F word" but admitted telling the guest to "get the hell out of here." Notes of Testimony,

---

[2] A DVD recording of the video was entered into the record. There is no audio.

October 27, 2014, at 31 (N.T. __); R.R. 45a. Barnabei considered the word "hell" to be profane, which violated Employer's policy and standards of conduct.

Lau also testified. He explained that an entry security administrator is required to stop anyone entering the casino that appears to be 30 years old or younger and ask for identification. He testified that the guest did look young and that it was appropriate for Claimant to stop him. The guest complained in an arrogant manner. Lau thought at the time that the guest was edging closer to Claimant; however, the surveillance video did not confirm this impression. Lau testified that he heard Claimant say "[d]o you think you're F'ing tough for stepping towards me." N.T. 49; R.R. 63a. The guest said "I don't understand why you're ID'ing me. I'm here every day." *Id*. Lau then heard Claimant order the guest out of the casino. When the guest went into the elevator, Lau alerted security that a guest had been turned away so that his exit could be tracked by surveillance cameras.

Ramon Hart, Director of Community Relations, also testified for Employer. Because the guest had threatened to tell his story to the media, Hart became involved in the investigation of Claimant's conduct and was present when Claimant was interviewed by Barnabei. Hart testified that Claimant admitted telling the guest to "get the hell out of here" and acknowledged that this was against casino policy. Hart viewed the surveillance video and believed Claimant's body language toward the guest was aggressive. Hart testified that Claimant violated Employer's policy by cursing and by using aggressive "body language." N.T. 40; R.R. 54a.

Claimant testified that the guest appeared to be under 30 years of age, so he asked him for identification. The guest responded that he was "F'ing 36

4

years old" and is "in here every day with my mom who's a black card member."[3] N.T. 64; R.R. 78a. Claimant asked him not to swear. The guest then produced his identification and said, "I told you I'm 36 F'ing years old." N.T. 64-65; R.R. 78a-79a. Claimant responded, "if you're going to use that language, please leave the casino right now" and pointed to the elevator. N.T. 65; R.R. 79a. The guest began walking towards the elevator, then turned and yelled, "this F'ing casino is F'ing bull s-h-i-t. F this casino." *Id*. Claimant replied, "[S]ir, if you feel that way, do not come back. We don't force you to come in here if you don't want to." *Id*.

Claimant testified that he is authorized to turn a guest away who refuses to produce identification or who "swear[s] at you," and he has done so in the past. N.T. 66; R.R. 80a. Claimant testified that he turned this particular guest away because he had a "bad attitude." N.T. 65; R.R. 79a. Claimant stated that he never cursed at the guest, never used "the F word" and did not say "get the hell out of here." N.T. 67, 71; R.R. 81a, 85a. Further, when Barnabei asked him about the incident, Claimant replied, "I did not swear at the guest." N.T. 71; R.R. 85a. He denied ever telling Barnabei that he used the word "hell." N.T. 71-72; R.R. 85a-86a.

Claimant testified that he did not hold on to the guest's identification card any longer than necessary. He looked at it, confirmed the guest was 36 years old and handed it back. They were both talking, so Claimant conceded that his hand may have been extended for a few seconds before the guest took back his card. Claimant testified that he did not make an aggressive move toward the guest.

_____

[3] When asked what it meant to be a "black card member," Claimant responded that it "means you spend a lot of money in the casino." N.T. 64; R.R. 78a.

Claimant stated that he moved slightly forward to give the identification card back but denied trying to intimidate the guest, who happens to be smaller than Claimant.

The Referee found that when Claimant asked the guest for identification, the guest responded that Claimant "should recognize him because he came to the facility often" and, while displaying his identification said, "[s]ee I'm 36 f***ing years old." Referee Decision, Findings of Fact Nos. 6 and 7. The Referee also found that Claimant told the guest to get the "h[ell] out of the casino" and "stepped closer to the guest" as he was saying it. *Id*., Findings of Fact Nos. 8 and 9. The Referee further found that Claimant "is 6' 3" and weighs 250 pounds, and is significantly larger than the guest." *Id*., Finding of Fact No. 10.

The Referee found that Claimant's act of stepping forward did not appear particularly intimidating and that if the guest was intimidated by Claimant's size it was not Claimant's fault. Indeed, the Referee observed that Employer "likely hired [Claimant] because of his size and presence[.]" Referee Decision at 2. However, the Referee found that Claimant's use of the word "hell" violated Employer's policy and its expected standards of behavior. Accordingly, the Referee held that Claimant had committed willful misconduct and was ineligible for unemployment compensation.

Claimant appealed to the Board. The Board agreed with the Referee's findings that the guest complained and cursed when asked to produce identification. However, the Board found that Claimant did not use profanity when he asked the guest to leave the casino. The Board found Claimant's testimony credible and specifically found that Claimant "did not admit to telling the [guest] to get the h*ll out of the casino." Board Adjudication at 3. The Board reiterated the Referee's finding that Claimant did not act in an intimidating manner, noting "that

6

[E]mployer likely hired [Claimant] because of his size and presence, and [that] this is also a condition which [he] has no control over." *Id.* In accordance with these findings of fact, the Board reversed the Referee and granted benefits.

In its petition for this Court's review, Employer raises several issues.[4] First, it argues that Claimant was terminated for violating its policy prohibiting rude or discourteous behavior toward guests, not for using profanity. Second, Employer argues that the Board failed to consider whether Claimant's conduct fell below the standards Employer can reasonably expect of its employees, even absent the use of profanity. Third, Employer contends the Board's findings on who used profanity are not supported by substantial evidence.

We begin with a review of the law on willful misconduct. Although not defined in the Law, the courts have established that it means the following:

> (1) an act of wanton or willful disregard of the employer's interest;
>
> (2) a deliberate violation of the employer's rules;
>
> (3) a disregard of standards of behavior which the employer has a right to expect of an employee; [or]
>
> (4) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer.

---

[4] Our scope of review determines whether constitutional rights were violated, an error of law occurred, or whether the factual findings are supported by substantial evidence of record. *Lello v. Unemployment Compensation Board of Review*, 59 A.3d 1153, 1156 n.3 (Pa. Cmwlth. 2013). Whether "an employee's action constitutes willful misconduct is a question of law" over which our scope of review is plenary. *Conemaugh Memorial Medical Center v. Unemployment Compensation Board of Review*, 814 A.2d 1286, 1288 (Pa. Cmwlth. 2003).

*Altemus v. Unemployment Compensation Board of Review*, 681 A.2d 866, 869 (Pa. Cmwlth. 1996). Whether conduct rises to the level of willful misconduct is a question of law to be determined by this Court. *PMA Reinsurance Corp. v. Unemployment Compensation Board of Review*, 558 A.2d 623, 625 (Pa. Cmwlth. 1989). It is the employer's burden to establish that a claimant's conduct constituted willful misconduct. *Conemaugh Memorial Medical Center v. Unemployment Compensation Board of Review*, 814 A.2d 1286, 1288 (Pa. Cmwlth. 2003).

Where willful misconduct is based upon the violation of a work rule, the employer must establish the existence of the rule, its reasonableness, and that the employee was aware of the rule. *Bishop Carroll High School v. Unemployment Compensation Board of Review*, 557 A.2d 1141, 1143 (Pa. Cmwlth. 1989). Stated another way, "the employer must show the existence of the rule and its *knowing* violation." *BK Foods, Inc. v. Unemployment Compensation Board of Review*, 547 A.2d 873, 875 (Pa. Cmwlth. 1988) (emphasis in original). Once an employer makes this showing, the burden shifts to the claimant to prove that the rule was unreasonable or that he had good cause for violating the rule. *Gillins v. Unemployment Compensation Board of Review*, 633 A.2d 1150, 1156 n. 3 (Pa. 1993).

In its first argument, Employer contends that Claimant's termination was not based solely on his alleged use of profanity. Rather, he was fired for violating Employer's policy against "[r]ude and/or discourteous behavior toward guests[.]" R.R. 110a. Employer argues that Claimant clearly violated this policy by stepping toward the guest and yelling "if you feel that way, do not come back. We don't force you to come in here if you don't want to." N.T. 65; R.R. 79a. Claimant responds that Employer never argued before the Referee or the Board

8

that this was the true reason for his dismissal; accordingly, Employer has waived this claim.

An employer "must prove that the act in question was the actual reason for the claimant's discharge." *Browning–Ferris Industries of Pennsylvania, Inc. v. Unemployment Compensation Board of Review*, 561 A.2d 856, 857 (Pa. Cmwlth. 1989). Issues not properly raised before the Referee and the Board are waived on appeal. *See Wing v. Unemployment Compensation Board of Review*, 436 A.2d 179 (Pa. 1981) (quoting *Zakrzewski v. Unemployment Compensation Board of Review*, 381 A.2d 503, 504 (Pa. 1978)) (holding that issue "is not properly before us" because it was not presented to Referee or Board).[5]

At the Referee's hearing, Employer never stated that it fired Claimant for telling the guest not to come back if he did not like the casino. Instead, Employer presented evidence that Claimant used profanity and assertive "body language" by taking a step toward the guest. Employer did not argue either before

---

[5] Waiver is also embodied in Pennsylvania Rule of Appellate Procedure 1551(a); it provides:

Review of quasijudicial orders shall be conducted by the court on the record made before the government unit. No question shall be heard or considered by the court which was not raised before the government unit except:

(1) Questions involving the validity of a statute.

(2) Questions involving the jurisdiction of the government unit over the subject matter of the adjudication.

(3) Questions which the court is satisfied that the petitioner could not by the exercise of due diligence have raised before the government unit. If, upon hearing before the court, the court is satisfied that any such additional question within the scope of this paragraph should be so raised, it shall remand the record to the government unit for further consideration of the additional question.

PA. R.A.P. 1551.

9

the Referee or the Board that Claimant committed willful misconduct by stating, "if you feel that way, do not come back" and "[w]e don't force you to come in here if you don't want to." The issue is waived.

In its second issue, Employer claims that the Board failed to consider all the circumstances around the altercation, and they show that Claimant's conduct fell below the standards of behavior Employer can reasonably expect of its employees, regardless of whether he used profanity. Employer contends that in the hospitality business, employees may not argue with guests. Its evidence showed that Claimant swore at the guest and took a step toward the guest. Claimant responds that the Board resolved the relevant conflicts in the testimony in his favor. Employer did not meet its burden of proving Claimant's conduct fell below the standards of behavior Employer had a right to expect.

In *Woodson v. Unemployment Compensation Board of Review*, 336 A.2d 867 (Pa. 1975), our Supreme Court explained:

> A determination of whether an employee has engaged in willful misconduct can ... only be made by considering what standard of conduct an employer reasonably requires. *Standards expected by one employer may of course not be the standards of another employer.* Willful misconduct cannot therefore be considered in a vacuum. *It must be considered in relation to the particular employees* and to the reasonable standards expected by a particular employer.

*Id.* at 868 (emphasis added). Stated otherwise, the "standard of conduct" analysis is not an exact science.

The Board acknowledged that Employer "gives great emphasis to providing a pleasant experience for its guests." Board Adjudication, Finding of Fact No. 2. The Board also acknowledged that Employer had adopted "a policy prohibiting use of profanity or rude or discourteous behavior towards guests[.]"

10

Board Adjudication, Finding of Fact No. 3. The question is not whether it was reasonable for Employer to expect Claimant to behave courteously toward guests but, rather, whether Employer's evidence proved a violation of that standard. The Board credited Claimant's testimony that he did not use profanity or move aggressively toward the guest. The Board is the ultimate fact-finder and has the authority to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. *Dumberth v. Unemployment Compensation Board of Review*, 837 A.2d 678, 681 (Pa. Cmwlth. 2003). Thus, Employer's second argument fails.

Finally, Employer argues that the Board's factual findings on Claimant's use of profanity are not supported by substantial evidence. Employer refers to one statement in the adjudication where the Board "concludes that [Claimant] did not use the f word with the [guest] as [Employer] alleged, as the testimony indicates only that [Claimant] stated 'f-ing' (N.T. 49) not the whole word, and [Claimant] consistently denied that he used the f word." Board Adjudication at 3. Employer contends that this is an inaccurate description of the testimony. The transcript demonstrates that the witnesses testifying at the hearing abbreviated the word "fuck" out of deference and respect for the proceedings.

Claimant responds that even if the above-cited statement in the Board's adjudication is inconsistent with the record, this does not establish that the findings on profanity were not supported by substantial evidence. This Court must examine the record as a whole. Claimant repeatedly denied using profanity. Rather, it was the guest who used profanity. The Board found Claimant's "testimony is credible that he did not use profanity." Board Adjudication at 3. It is

11

irrelevant whether Employer was trying to prove Claimant said "fucking" or "F'ing."[6]

Where substantial evidence supports the Board's findings, they are conclusive on appeal. *Pennsylvania Liquor Control Board v. Unemployment Compensation Board of Review,* 879 A.2d 388 (Pa. Cmwlth. 2005). Substantial evidence is established if the record "taken as a whole" supports the findings. *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829, 831 (Pa. 1977). On appeal, this Court's

> duty is to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony, to see if substantial evidence for the Board's conclusion exists.

*Id*. Substantial evidence, *i.e.*, Claimant's credited testimony that he never used "the F word" or said the word "hell," supports the Board's finding that Claimant did not use profanity. N.T. 67, 74; R.R. 81a, 88a.

Accordingly the order of the Board is affirmed.

_____
MARY HANNAH LEAVITT, Judge

---

[6] Employer cites to the testimony of Lau, who repeatedly used the term "F'ing" at the hearing when referring to the statements made by Claimant and the guest. *See* N.T. 49, 64-65; R.R. 63a, 78a-79a. In his incident report, Lau stated that Claimant used the word "fucking." R.R. 204a. The Board believed, apparently, that it was the guest and not Claimant that used that word. The Board credited Claimant's testimony that he "did not use profanity," did not say "h[e]ll" and did not use "the f word." Board Adjudication at 3. Claimant testified that he "never swore at the [guest]" or "used the F word" or said the word "hell." N.T. 67, 74; R.R. 81a, 88a.

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Holdings Acquisition Co., L.P., : 
d/b/a Rivers Casino, : 
          Petitioner : 
           : 
          v. :  No. 135 C.D. 2015
           : 
Unemployment Compensation : 
Board of Review, : 
          Respondent : 

## **O R D E R**

AND NOW, this 19th day of October, 2015, the order of the Unemployment Compensation Board of Review, dated January 15, 2015, is AFFIRMED.

 

_____
MARY HANNAH LEAVITT, Judge