IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Armstrong World Industries,      :
                       Petitioner      :
                                       :      No.  1724 C.D. 2015
                  v.      :
                                       :      Submitted:  April 8, 2016
Unemployment Compensation      :
Board of Review,      :
                       Respondent      :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                      FILED:  September 15, 2016


       Armstrong World Industries (Employer) petitions for review of the September 4, 2015 order of the Unemployment Compensation Board of Review (Board), which reversed a referee's decision holding that Albert Miller (Claimant) is ineligible for unemployment compensation benefits pursuant to section 402(e) of the Unemployment Compensation Law (Law).[1]

       Employer employed Claimant as a full-time shift electrician from November 6, 2002, to January 25, 2015.  (Board's Finding of Fact No. 1.)  Employer

---

[1]  Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).  Section 402(e) of the Law provides that an employee shall be ineligible for benefits for any week in which his unemployment is due to his discharge from work for willful misconduct connected with his work.

maintains a Workplace Violence Policy (the Policy) which prohibits an employee from committing or threatening to commit "any act of violence . . . while at the company." (Board's Finding of Fact No. 2.) The Policy defines "violence" as "any threats, threatening behavior or acts of violence conducted against an employee . . . ." (Board's Finding of Fact No. 3.) Claimant was aware of or should have been aware of Employer's policy. (Board's Finding of Fact No. 5.)

Claimant and another co-worker, Mark Kauffman (Kauffman) were competitors for overtime and Claimant had previously questioned the distribution of overtime between himself and Kauffman. On January 25, 2015, as Claimant was leaving the locker room at the end of his shift, Kauffman was entering the locker room. As Claimant and Kauffman were passing each other, Kauffman leaned into Claimant and the two bumped shoulders. As Claimant neared the exit of the locker room, Kauffman began yelling that Claimant had deliberately bumped into him. Claimant stopped and turned around to find Kauffman aggressively approaching him, at which time Claimant tried to push Kauffman away. Claimant subsequently grabbed Kauffman, wrestled him to the floor, and applied a headlock, but he never struck Kauffman. (Board's Findings of Fact Nos. 6-14.)

Kauffman broke free from Claimant, got up off the floor, and appeared to be enraged. Kauffman proceeded to bang his own head against the wall, accusing Claimant of hitting him and stating that he was calling the police. Kauffman then walked out of the locker room. Shortly thereafter, Claimant walked out of the locker room and Kauffman again charged at him. Claimant again tried to wrestle Kauffman to the ground, but he was unsuccessful and slipped and fell to one knee. At that point, Kauffman kicked Claimant in the face under his chin. Kauffman then left, again stating that Claimant hit him and he was calling the police. Kauffman

2

thereafter complained to Employer, which initiated an investigation of the incident. Following this investigation, Employer discharged both Claimant and Kauffman for fighting on the job. (Board's Findings of Fact Nos. 15-25.)

Claimant applied for unemployment compensation benefits with his local service center. The local service center determined that Claimant was not ineligible for benefits under section 402(e) of the Law because he was acting in self-defense, and, therefore, he had good cause for his actions. Employer appealed and a referee held a hearing on March 18, 2015.

Terry Miles (Miles), Employer's Maintenance Supervisor, testified that he was first told about the incident by Kauffman, after which he conducted interviews with both parties. Miles testified that Claimant described the situation exactly as noted above. Miles acknowledged that Claimant never mentioned the possibility of leaving the locker room when Kauffman first approached. Miles also testified that friction existed between the two men, which he understood pertained to overtime. However, Miles never personally witnessed any friction. Miles noted that Claimant's story remained consistent when he was interviewed a couple of days later. Miles further testified that he believed that Claimant initiated the shoulder contact that led to the confrontation and that both Claimant and Kauffman were fired as a result of the same. (Reproduced Record (R.R.) at 22a-30a.)

The referee proceeded to ask Miles additional questions with respect to his interview with Kauffman. In response to the referee, Miles testified that Kauffman's story was different from the story told by Claimant. More specifically, Miles stated that Kauffman claimed that both men were yelling at each other after bumping shoulders and the next thing Kauffman knew, he was on the floor being punched by Claimant. Contrary to Claimant's description, Kauffman alleged that he

3

did not charge at Claimant but that both men approached each other. Kauffman told Miles that he left the room as soon as he could escape. Additionally, Miles noted that Kauffman denied that a second confrontation occurred outside the locker room. Further, Miles denied seeing any bruises on Claimant immediately after the incident, but did notice bruising under Kauffman's right eye and a cut on the bridge of his nose. (R.R. at 35a-36a.)

Rosemary Hartman (Hartman), Employer's Human Resources Manager, testified that Employer had a zero tolerance policy toward violence, but stated that this was the first application of the Policy that she experienced with Employer. Hartman acknowledged that a lesser discipline could have been imposed under the Policy, as it provides for discipline up to and including termination. Hartman stated that she did not make the final decision regarding termination of Claimant and Kauffman, and that the final decision to terminate was made by a review board at the corporate level. (R.R. at 19a-21a.)

Hartman further testified that she was involved in second interviews of Claimant and Kauffman and that she was required to prepare an incident report to be filed with the corporate office. Hartman then identified the incident report she prepared, which summarized the interviews with Claimant and Kauffman and included photos of both employees taken after the incident. Similar to Miles, Hartman observed bruising under Kauffman's right eye and a cut on the bridge of his nose. Hartman further testified that Employer trains its employees on this Policy, and

4

identified a training sheet that included Claimant's printed name and employee number, which indicated that he had received such training.[2] (R.R. at 37a, 40a-42a.)

Claimant offered testimony about the incident, which mirrored his interview with Miles and the facts as described above. Claimant stated that he only followed Kauffman out of the locker room and into the maintenance shop because the supervisor's office was located there and he wanted to wait for the supervisor to return. Claimant maintained that there was no opportunity to escape because: (1) he would have been required to turn his back on Kauffman during the first confrontation or step towards Kauffman in the second confrontation in order to escape, and (2) there was insufficient time to do so because the incidents occurred so quickly. (R.R. at 48a, 57a.)

Claimant admitted that he was aware of the Policy and the existence of friction between him and Kauffman. Claimant stated that he was the union steward for the maintenance shop. He testified that he questioned management about overtime and certain rules, which created disagreements. Claimant asserted that Kauffman was violating shop rules and Claimant approached management about this. Further, Claimant indicated that Kauffman had accused Claimant of tearing down one of Kauffman's calendars in the shop. Otherwise, Claimant stated that no cross words were exchanged between he and Kauffman. Claimant noted that the confrontation at issue occurred approximately one month after the original friction regarding overtime. (R.R. at 49a, 52a-53a.)

---

[2] Claimant did not actually sign this sheet. Hartman testified that some employees do not want to sign their name, but they are required to print their name and place their employee number on the sheet to acknowledge receipt of the training. (R.R. at 42a.)

By decision and order dated March 26, 2015, the referee reversed the determination of the local service center, holding that Claimant was ineligible for benefits under section 402(e) of the Law. The referee concluded that Claimant was not acting in self-defense, but rather, he was a willful combatant in the fight. The referee noted that Claimant had the ability to escape on three separate occasions, but failed to take advantage of any of these opportunities. In doing so, the referee found that Claimant exercised poor judgment and effectively escalated the situation with Kauffman. Thus, the referee concluded that Claimant violated Employer's Policy, which constituted willful misconduct and rendered him ineligible for benefits under section 402(e) of the Law. Claimant appealed the referee's decision to the Board.

By decision and order dated September 4, 2015, the Board reversed the decision of the referee and held that Claimant was not ineligible for benefits under section 402(e) of the Law. The Board credited Claimant's testimony and relied on the same to find that Claimant had no time to extricate himself from the situation and he was merely acting in self-defense. Thus, the Board concluded that Claimant's actions "were purely defensive and reasonable" and did not rise to the level of willful misconduct. (Board's op. at 3.) Employer subsequently filed an appeal with this Court.

On appeal,[3] Employer argues that the Board improperly shifted the burden to it to establish that Claimant did not act in self-defense and errantly focused exclusively on who initiated the incident in analyzing this rule-violation case. Employer also argues that the Board erred in concluding that Claimant's actions did

---

[3] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Krum v. Unemployment Compensation Board of Review*, 689 A.2d 330, 332 (Pa. Cmwlth. 1997).

6

not rise to the level of willful misconduct because Claimant escalated the situation instead of attempting to extricate himself from the same. We disagree with Employer's arguments.

The employer bears the burden of proving that the employee's actions rose to the level of willful misconduct. *Stauffer v. Unemployment Compensation Board of Review*, 455 A.2d 300, 301 (Pa. Cmwlth. 1983). Whether an employee's actions constitute willful misconduct is a question of law subject to review by this Court. *Noland v. Unemployment Compensation Board of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981). While the Law does not define willful misconduct, our courts have interpreted it as including: (1) the wanton or willful disregard of the employer's interests; (2) the deliberate violation of the employer's rules; (3) the disregard of the standards of behavior which an employer can rightfully expect from an employee; or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations. *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999).

An employer alleging a work rule violation bears the burden of establishing both the existence of a reasonable work rule and its violation. *Daniels v. Unemployment Compensation Board of Review*, 755 A.2d 729, 731 (Pa. Cmwlth. 2000). If an employer meets its initial burden to establish the existence of a reasonable work rule and its violation, the burden shifts to the claimant to demonstrate good cause for violating the rule. *Guthrie*, 738 A.2d at 522. "A claimant has good cause if his or her actions are justifiable and reasonable under the circumstances." *Docherty v. Unemployment Compensation Board of Review*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006).

7

"Even in the absence of a written policy, fighting may be considered a disregard of the standards of behavior that an employer can expect from its employees, even when the claimant was not the initial aggressor." *Miller v. Unemployment Compensation Board of Review*, 83 A.3d 484, 487 (Pa. Cmwlth. 2014). In such situations, where a claimant has the opportunity to retreat and seek help but instead willingly continues to escalate the situation, the claimant's actions are "neither reasonable nor justifiable and [do] not constitute good cause." *Rivera v. Unemployment Compensation Board of Review*, 526 A.2d 1253, 1256 (Pa. Cmwlth. 1987). However, when a claimant has a reasonable belief of imminent bodily harm and fears he is in danger of an assault, he is justified in using reasonable retaliatory force for purposes of self-defense. *Miller,* 83 A.3d at 487 ("using reasonable force in self-defense is, in some situations, justifiable"); *see also Sun Oil Company v. Unemployment Compensation Board of Review*, 408 A.2d 1169, 1171 (Pa. Cmwlth. 1979) ("A reasonable belief of imminent bodily harm and feared danger of an assault justifies reasonable retaliatory force.").

In the present case, Employer first argues that the Board improperly shifted the burden to it to establish that Claimant did not act in self-defense. However, Employer fails to point to where this shifting occurred in the Board's decision. Instead, Employer merely recites the burdens in a rule-violation case and asserts that Claimant had the burden to establish good cause. A review of the Board's decision reveals that the Board appears to have found that Employer met its initial burden of establishing the existence of a rule and its violation and considered the only remaining question to be whether Claimant had good cause for violating the same. Indeed, the Board's findings of fact discuss Employer's Policy and include direct quotes from the same. These findings proceed to review the specific actions of

8

Claimant and Kauffman during the incident in question. While the Board's discussion reiterates the general burden on an employer to establish willful misconduct, we fail to see any indication that the Board improperly shifted the burden to Employer to establish that Claimant did not act in self-defense.

Next, Employer argues that the Board errantly focused exclusively on who initiated the incident in analyzing this rule-violation case. We do not agree. In its discussion, the Board did state that Claimant's co-worker, Kauffman, "was clearly the aggressor" and "instigated the entire incident." (Board op. at 3.) However, the Board did not rely exclusively on these statements in analyzing this case. Rather, the Board went further to note that Claimant "did not have time to extricate himself from the situation and his actions were purely defensive and reasonable." *Id.* The Board also noted that Claimant never struck Kauffman when responding to either attack. Ultimately, the Board found that Claimant was acting, at all times, in self-defense and concluded that his actions did not amount to willful misconduct. Upon review of the Board's decision, it appears that the Board engaged in a proper analysis in reaching this conclusion.[4]

Finally, Employer argues that the Board erred in concluding that Claimant's actions did not rise to the level of willful misconduct because Claimant escalated the situation instead of attempting to extricate himself from the same. However, in making this argument, Employer ignores the facts found by the Board and asks this Court to accept its preferred version of the facts. The law is well settled that the Board is the ultimate finder of fact and arbiter of witness credibility. *Bruce v.*

---

[4] We note that a determination of who is the aggressor is necessarily part of the required analysis in a case involving workplace violence and impacts directly on the question of good cause. While it may be improper for the Board to rely exclusively on such a determination in workplace violence cases, the Board simply did not do so here.

*Unemployment Compensation Board of Review*, 2 A.3d 667, 671 (Pa. Cmwlth. 2010). Thus, as long as the Board's factual findings are supported by substantial evidence, those findings are conclusive on appeal. *Id.*

The Board found that Kauffman initiated the incident by bumping Claimant's shoulder as they passed each other in the locker room, after which Kauffman began yelling at Claimant and aggressively approached him. By that point, the Board found that Claimant had turned and his back was to the locker room door. Additionally, the Board found that Kauffman charged Claimant a second time immediately after he exited the locker room. In both instances, the Board found that Claimant had no time to extricate himself from the situation. These findings are supported by Claimant's testimony, which the Board credited in reaching its decision, and are conclusive on appeal. Further, these findings support the Board's conclusion that Claimant's actions did not rise to the level of willful misconduct.

Accordingly, the order of the Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Armstrong World Industries,      :
         Petitioner      :
                       :   No. 1724 C.D. 2015
         v.      :
                       :
Unemployment Compensation      :
Board of Review,      :
         Respondent      :

## _ORDER_

AND NOW, this 15th day of September, 2016, the order of the Unemployment Compensation Board of Review, dated September 4, 2015, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge